UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ALFREDO GARCIA, | ) | |
| Institutional ID No. 1551286, | ) | |
| SID No. 2489306, | ) | |
| Previous TDCJ Nos. 437737, 668073, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:09-CV-210-BG |
| DAWSON COUNTY SHERIFFS | ) | ECF |
| AND JAILERS/AGENTS, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.     Background**

Appearing *pro se* and *in forma pauperis*, Plaintiff Alfredo Garcia, an inmate incarcerated by the Texas Department of Criminal Justice, brought this action pursuant to 42 U.S.C. § 1983 complaining that Defendants violated his constitutional rights during his arrest on June 15, 2008, and during his subsequent incarceration at the Dawson County Jail. The United States District Court transferred the case to the United States Magistrate Judge for further proceedings. The order of transfer directs that the case is to be transferred back to the docket of the United States District Court if either the Plaintiff or a Defendant does not consent to proceed before this court. The United States Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985), and offered Garcia an opportunity to consent to the jurisdiction of the United States Magistrate Judge. Garcia declined to consent to the court's jurisdiction.

After reviewing Garcia's complaint, his testimony at the *Spears* hearing, and authenticated

records from Dawson County Jail, this court recommends that the District Court dismiss Garcia's complaint with prejudice.

## II.     Garcia's Allegations

Garcia names as Defendants Johnny Garcia and Kent Parchman, individuals Garcia identifies as Dawson County Sheriffs; Johnny Sauseda (J. Sauseda"), the Dawson County Jail Administrator; Johnny Ortegon, an individual Garcia identifies as an investigator at the jail; Rudy Sauseda ("R. Sauseda") and Leandro Rafael Gray, individuals who are not affiliated with Dawson County or the jail; and a number of guards at the jail.

Garcia claims R. Sauseda and Leandro Rafael Gray arrested him at approximately 1:00 a.m. on June 15, 2008, when he was leaving Bubba's Night Club in Lamesa, Texas.  He claims R. Sauseda and Gray believed he was carrying a weapon and that they attacked him and placed handcuffs on him and that he was injured during the arrest.  He claims he suffered from a number of pre-existing conditions prior to the arrest, including liver disease, heart disease, and hypertension, and that he had undergone surgery almost one year prior to the arrest during which a stent was placed between his liver and his colon. He claims the attack by R. Sauseda and Gray aggravated his pre-existing conditions and that it caused problems with the placement of his stent.

Garcia testified that Officer Andrew Barker, a Dawson County law enforcement officer and an individual Garcia has not named as a defendant, arrived at Bubba's Night Club after R. Sauseda and Gray had constrained him, that Officer Barker removed the handcuffs R. Sauseda and Gray had placed on him and placed other handcuffs on him, and that Officer Barker directed a police deputy to transport him to the Dawson County Jail.  Garcia claims he remained at the jail from June 15, 2008, until Febreuary 12, 2009, and that jail officials acted with deliberate indifference to

his serious medical needs during that time, that they interfered with his right to access the courts, and that they conspired to fast-track the criminal proceedings that were pending against him.

### III.   Standard of Review

Because Garcia was permitted to proceed *in forma pauperis*, the court must dismiss his claims if it determines that his allegation of poverty is untrue or that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2); *see Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  The court has broad discretion in determining whether a complaint brought *in forma pauperis* is frivolous and may dismiss such complaints based on the plaintiff's allegations, testimony obtained at a hearing held pursuant to *Spears*, 766 F.2d at 181-82, and authenticated medical records, *see Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (acknowledging that dismissals may be based on adequately identified or authenticated records); *see also Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Cay v. Estelle*, 789 F.2d 318, 323-24 (5th Cir. 1986) (affirming the court's power to elicit a plaintiff's testimony for the purpose of determining whether his claims are frivolous)).

### IV.   Garcia's Claims Regarding the Citizen's Arrest

Garcia has not claimed that his arrest on June 15, 2008, was wrongful.  He complains only of the excessive force used incident to his arrest and he places liability for the excessive force on Defendants R. Sauseda and Leandro Rafael Gray.  Garcia testified that R. Sauseda is the owner of Bubba's Night Club, the site of the arrest, and that Gray worked as a "bouncer" and as a waiter at the club.  At the *Spears* hearing he characterized the arrest by R. Sauseda and Gray as a "citizen's arrest."

Based on Garcia's testimony, the excessive force he alleges was not committed by

individuals acting under color of state law.  In order to state a claim under 42 U.S.C. § 1983, the plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law."  *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).  Garcia's allegations regarding the use of force on June 15, 2008, do not demonstrate wrongful actions committed by a person acting under color of state law.  Garcia has therefore failed to state a viable § 1983 action against R. Sauseda and Gray.

### V.     Garcia's Claims of Deliberate Indifference

A pretrial detainee's constitutional right to adequate safety and medical care is provided in the procedural and substantive due process guarantees of the Fourteenth Amendment.  *Jacobs v. W. Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 (5th Cir. 2000).  Due process guarantees require that jail officials provide detainees with medical care and protection from harm.  *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).  A jail official violates a detainee's due process rights, however, only if he acts with deliberate indifference to a substantial risk of serious harm to the inmate.  *Id*.  Deliberate indifference is established when (1) the jail official was aware of facts from which it could be inferred that there existed a substantial risk of serious harm to the inmate; (2) the jail official was subjectively aware of the risk of harm to the inmate; and (3) the jail official's response indicates that he subjectively intended harm to occur to the inmate.  *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001) (citing *Hare*, 74 F.3d at 649-50).

Garcia's allegations and authenticated records from Dawson County demonstrate that none of the defendants Garcia has named in this suit acted with deliberate indifference to his medical needs.  Garcia's primary complaint is that jail officials did not respond expeditiously to his sick call

4

requests. For example, he claims he submitted a sick call request complaining of abdominal pain and dental pain two or three days after his arrest and complains that he did not receive immediate attention and that he was forced to submit additional requests. However, based on Garcia's testimony, he was examined by a physician for his complaints two weeks and one day from the date on which he submitted his first request, and he underwent diagnostic testing five days later: Garcia testified that jail guards transported him to the Medical Arts Clinic in Lamesa, Texas, on July 3, 2008, and that he was examined by an individual he identified as "Dr. Roberts." He claims Dr. Roberts prescribed medication, including lisinopril, for his hypertension and that he ordered diagnostic testing, which Garcia underwent on July 8, 2008.

In regard to Garcia's sick call request for dental care, Garcia testified that he submitted a sick call request for dental care on June 17, 2008, and complains that he was not examined until mid-August. He testified that the dentist extracted a tooth and that the tooth extraction relieved his pain. Garcia also complains of a four-day delay between the date on which he filed a sick call request in August 2008 and the date on which he was examined by a physician: He claims that he submitted a sick call request complaining of severe liver and abdominal pain on August 23, 2008, and that he was not examined by Dr. Roberts until August 27, 2008.

The delays Garcia reports do not demonstrate deliberate indifference. Mere delay of medical care is not a constitutional violation unless it was the result of deliberate indifference and resulted in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Garcia has not shown that any of the Defendants were deliberately indifferent to his plight or that they were responsible for the short-term delays in receiving medical care. He has not alleged that any of the Defendants destroyed or confiscated his

sick call requests or that they engaged in tactics that were intended to delay his receipt of medical care. According to the authenticated records and Garcia's testimony, the physicians and the dentist who provided Garcia with medical and dental care during his incarceration at the Dawson County Jail are not employed by Dawson County and the care Garcia received was not provided in the Dawson County Jail. Therefore, when Garcia filed his sick call requests, prison staff had to review the requests and obtain outside appointments for Garcia. Obtaining appointments on the schedules of physicians and dentists often takes time. There may not be space on the physician's or dentist's schedule for a new patient appointment and new patient appointments are generally not given priority. The fact that Garcia waited two weeks for an appointment with Dr. Roberts and two months for an appointment with the dentist is not surprising or unreasonable and does not demonstrate deliberate indifference.

In addition, Garcia has not alleged, and the authenticated medical records do not show, that the delay in receiving medical and dental care caused substantial harm to Garcia. Garcia testified that the extraction of the tooth relieved his pain. In regard to his hypertension and gastrointestinal problems, Garcia testified that he is doing well.

In addition to his complaints of delayed medical care, Garcia claims that an inmate who worked in the kitchen retaliated against him by sabotaging the medical diet plan Dr. Roberts prescribed for him because he (Garcia) had complained about food. This claim fails for the same reason Garcia's claims against R. Sauseda and Gray fail; the inmate was not acting under color of state law when he allegedly sabotaged Garcia's medical diet plan. *See West*, 487 U.S. at 48; *see also Harris v. Rhodes*, 94 F.3d 196, 197-98 (5th Cir. 1996) (inmate trustee was pursuing private objectives and not acting under color of state law when he punched an inmate in the face).

Finally, Garcia claims the lisinopril Dr. Roberts prescribed caused side effects, including nose bleeds, head pain, eye pain, shortness of breath, and blood clots in his nose and that the medication did not control his blood pressure. He claims that when he complained about these problems, J. Sauseda, the administrator of the jail, did not do anything to address the problem and instead told him to give the medication time to work. Garcia contends that he is sure the medication was the source of many of his problems and claims that in December 2008, during a short hospital stay, he was given different medication for his hypertension and did not experience the side effects he experienced while taking lisinopril. He claims that after he was transported from the hospital to the jail, he was given lisinopril again and that he again experienced adverse reactions to the medication. He claims that J. Sauseda again did nothing to address the problem. Garcia testified that he now takes a combination of medications and that he does not experience side effects. He claims medical personnel at Texas Department of Criminal Justice worked with him to find the right combination of medications and that he now feels well.

Garcia may have been frustrated with the fact that lisinopril caused side effects. However, Garcia's physicians prescribed the medication for him, and J. Sauseda was without authority to change the physicians' orders. Prison officials cannot interfere with medical treatment once it is prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). To the extent Garcia believes the medication should not have been prescribed and seeks to place liability on the physicians who prescribed it, such a claim is without merit. Although judgments regarding the appropriate form of medical treatment may, depending on the facts, demonstrate medical malpractice, they do not rise to the level of a constitutional violation. *See id*. at 107. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 106. More particularly, negligence or mistake in treating a medical condition does not state a valid constitutional claim.

*Id.* at 105-106; *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Allegations that medical personnel should have attempted different methods of treatment is characterized as a disagreement with a physician's judgment regarding medical treatment and does not state an Eighth Amendment claim. *See Estelle*, 429 U.S. at 107; *Norton v. Dimazana*, 122 F3d. 286, 292 (5th Cir. 1997).

In order to establish a constitutional violation in regard to an inmate's medical care, it must be shown that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Guzman v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations and citation omitted). None of Garcia's allegations demonstrate such actions. The allegations in Garcia's complaint set forth a time line that shows that Garcia experienced serious gastrointestinal problems during his incarceration at Dawson County Jail. The time line also shows that jail officials responded to Garcia's complaints regarding his illnesses and obtained medical care that addressed his illnesses. According to Garcia, he was examined by a physician and underwent diagnostic testing within three weeks of his arrest. According to Garcia, the diagnostic testing showed inflammation in his liver and high enzyme levels and Dr. Roberts therefore ordered a follow-up appointment for him on November 7, 2008. Prison officials complied with Dr. Roberts' orders; Garcia claims prison officials transported him on November 7, 2008, to University Medical Center ("UMC") in Lubbock where he was examined by a specialist. According to Garcia, prison officials again transported him to UMC on November 26, 2008, for testing and transported him there again on December 5, 2008, at which time he underwent a scheduled surgery. Garcia claims he experienced severe abdominal pain after he was transported back to the jail and, according to Garcia, jail officials responded immediately by taking him to a local emergency room. They then

8

transported him back to UMC where he remained until December 12, 2008. According to Garcia, prison officials transported him to UMC again on January 6, 2009, and transported him to an appointment with Dr. Roberts on January 15, 2009. According to billing statements from UMC, Dawson County was billed $34,631.59 for the testing and procedures Garcia underwent in UMC, and this amount does not include the appointments with Dr. Roberts, Garcia's examination at the emergency room, or the charges for the seven days Garcia was treated in the hospital in December 2008.

The evidence in the authenticated medical records from Dawson County and Garcia's testimony demonstrate that Garcia was provided with adequate medical care during his incarceration at the Dawson County Jail. Rather than demonstrating deliberate indifference, the evidence in this case demonstrates the opposite. His claims of deliberate indifference should therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## VI.     Garcia's Claims of Interference with His Right to Access the Courts

Garcia claims J. Sauseda and a guard at the jail tampered with legal documents and destroyed legal mail related to the criminal proceedings that were pending against him while he was incarcerated at the jail, and he faults Johnny Ortegon, an investigator at the jail, for failing to adequately investigate the incident. Garcia claims he drafted a motion in which he requested that the court address issues related to his medical care and access to the jail law library and that the court appoint different counsel to represent him at his criminal trial. He claims he mailed the motion to a friend on December 17, 2008, so that she could make copies for him. He claims his friend made the copies and returned the motion and copies of the motion, along with a letter and money order, to him on December 20, 2008. He claims that a guard brought the money order to him but that he

9

never received his motion or the copies of the motion. He testified that he believes J. Sauseda confiscated the papers. He further testified that he re-wrote the motion and filed it with the court in mid-January 2009 and the court denied the motion.

In order to show that his constitutional rights were violated as a result of the alleged confiscation of his documents, Garcia must demonstrate that his standing in his criminal case was prejudiced. *See Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1995) (holding that the plaintiff was required to show that his position as a litigant was prejudiced as the result of mail tampering). Garcia's allegations and testimony do not demonstrate that his standing in the criminal proceedings pending against him was prejudiced as a result of the violations he alleges. Although Garcia testified that his motion was denied, he has not claimed that the motion was denied because it was filed beyond a court deadline or because of any other reason that might be attributed to jail officials.

Garcia's claim that Oregon failed to adequately investigate his complaints is frivolous. Inmates have a liberty interest only from actions imposing atypical and significant hardship in relation to the ordinary incidents of prison life. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (citation and internal quotation omitted). Inmates do not have a protected liberty interest in having complaints resolved to their satisfaction. *See id*. (finding inmate's claim that officials failed to properly investigate his complaints about the conduct of mail room and security staff without merit).

## VII.     Garcia's Claim of Conspiracy to Fast-Track Criminal Proceedings

Garcia claims that because he complained about the medical care he received at the jail, his criminal trial was fast-tracked ahead of the trials of other inmates who had been waiting for trial much longer than he had been waiting. This claim is without merit. Pursuant to the United States

Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure, the rights of those accused of crimes include the right to a speedy trial. U.S. Const. amend. VI; Tex Const. Art I § 10; Code Crim. Proc. Ann. art 1.05 (Vernon Supp. 2008). In Texas, the prosecuting attorney and the courts are responsible for ensuring an accused individual a speedy trial, *Turner v. State*, 504 S.W.2d 843, 845 (Tex. Crim. App. 1974, no writ); jail administrators play no role in determining trial settings. Garcia's claim should be dismissed as frivolous.

## VIII.   Recommendation

For the foregoing reasons, the undersigned recommends that the District Court dismiss Garcia's complaint and all claims alleged therein with prejudice pursuant to 28 U.S.C. § 1915(e)(2). The undersigned further recommends that the dismissal be considered a "strike" for purposes of 28 U.S.C. § 1915(g). *See Adepegba v. Hammons*, 103 F.3d 383, 387-88 (5th Cir. 1996).

## IX.   Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs*.

*Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

        Dated:        May 28, 2010.

                                              NANCY M. KOENIG  
                                              United States Magistrate Judge